*In re* HEATON'S ESTATE.

HEATON *v.* HEATON'S ESTATE.

1. PARENT AND CHILD—CONTRACTS—STATEMENTS BY FATHER OF INTENTION TO MAKE GIFT TO SON INSUFFICIENT ON WHICH TO BASE CONTRACT.

Expressions of a father of his intention to give to his son, who stayed at home and worked with him, a•particu-

[1]Executors and Administrators, 24 C. J. § 882; Parent and Child, 29 Cyc. p. 1630.

lar farm which the son worked on shares, are insufficient
on which to base a contract to pay the son wages or to
compensate him by grant of the farm.

2. SAME—WORKING FARM ON SHARES NEGATIVES CLAIM OF CON-
TRACT FOR OTHER COMPENSATION.

The fact that the son was working the farm on shares at
the time the father expressed his intention of giving it
to the son negatives any claim of working for other hire
or under a different contract with the father.

Error to Muskegon; Vanderwerp (John), J.    Sub-
mitted April 20, 1927.    (Docket No. 131.)    Decided
June 24, 1927.

Anson Heaton presented a claim against the estate
of William Heaton, deceased, for services rendered.
The claim was disallowed by the commissioners, and
plaintiff appealed to the circuit court.    Judgment for
defendant on a directed verdict.    Plaintiff brings error.
Affirmed.

*Alexis J. Rogoski* and *R. Glen Dunn,* for appellant.

*Cross, Foote & Sessions,* for appellee.

WIEST, J.    This suit involves a claim by a son
against his father's estate for services rendered for
six years, with an alleged promise of a farm as com-
pensation.    The claim was disallowed by commis-
sioners, and in the circuit, at the close of the evidence,
a verdict was directed in favor of the estate.    The
evidence related to casual statements made by the
father of his obligation to his son and his intention
to compensate him, and the question for us, under the
writ of error, is whether an issue was presented for
the jury.

William Heaton, the father, died in April, 1925, at
the age of 83 years.    He owned farms and had con-

²Parent and Child, 29 Cyc. p. 1630.

239—Mich.—28.

ducted a saloon and small store. He was thrifty and close in his dealings with his children, and all but plaintiff left the rooftree to better themselves. Plaintiff, the oldest son, was 54 years of age at the time of the trial. He had remained with his father and worked at one time in the store and from time to time on some of the farms. The year before his father's death he was on the Flagel farm, so-called, owned by his father. He worked that farm on shares. Plaintiff is married and has five children, and in some way, not clearly disclosed, unless by inference, he was at all times by way of income, either from his father or share of crops in farming, able to take care of his family and provide the children with good educations. While plaintiff was on the Flagel farm and working the place on shares, it is claimed the following statements were made by the father in conversations with the following witnesses:

John Goebel testified:

"He thought he would give that best place (Flagel farm) to Anson. * * * He says (at the farm): 'Well, Anson, you want this place and stock and tools and all what there is here.' 'Well,' he says, 'that depends. * * * I want something for the seed that I put in this property and for the fertilizer I put on the farm, out of the crops.' And then Anson asked him how much he wanted, and he said: 'I ought to have the money I put in, but,' he says 'the south 80 I want to keep and sell it. There is a mortgage on that, to help pay the mortgage on this place here,' and Anson asked him when he was going to close up the deal, and he says he had to go to the Coopersville Bank first. * * * He said he was going to give him that stock and farm for his work there. There had been, I guess, a little trouble between them, I don't know. William Heaton said something to me about deeding the farm to Anson. He said he was going to give Anson the Flagel farm, the same place they were talking about now. * * * He says to me, 'I guess I will give Anson this place.' "

Carlos Johnson testified:

"He told me that, he says, 'The boy is a good boy to stay with me,' he says, 'He is the only one that I can trust to do business for me.' * * * 'I think that I am going to give Anson that Hunter (Flagel) farm, the stock and tools and things on it; it ought to compensate him for what he has done for me.' * * * It was in 1924. * * * William Heaton was• running the store and Anson Heaton was on the Flagel farm. I think Anson was working the farm on shares. He told me that, the spring he went there. He was only on there one year. Anson has five children. They were with him on the farm. * * *

"*Q.* You said, 'Why don't you give it to him now?'

"*A.* Yes, sir. * * *

"*Q.* And he said to you, 'I can't just now; there is a mortgage on the property; if I give him the farm it would kill the mortgage?' * * *

"*A.* Yes, sir."

Louis Johnson testified:

"What he said to me regarding the farm was that he calculated that the Flagel farm, except the south 80, would be Anson's, but he said he could not do anything with it then because there was a mortgage on it and he would have to wait till that was cleaned up; till he cleaned up the mortgage before he could give Anson a deed to the place. * * * He said Anson had been with him a good many years and he didn't think it was any more than right, than what would be right to give Anson a home for the rest of his life."

Frank Watts testified:

"I had a talk with him regarding his son, Anson, and what he was going to do for him. That was in 1924. * * * Why, Mr. Heaton said that Anson had always lived with him and he had always been a good worker and he was going to give him a deed of that place. * * * I said, 'You got a nice crop of corn there,' and he said, 'Yes, * * * my boy raised that corn. * * * I am going to give this boy this farm. * * * He has always lived with me and he has earned it.' "

George Vincent testified:

"He was telling me that he bought the farm and was going to have it for Anson.   He said Anson was working the farm."

This was in 1924.

Harold Latourneau testified:

"At the time Anson left the store and went to the farm, I remember Mr. Heaton saying that that is the best thing he can do was to go up there and live on that farm, and that he would give it to him."

It is evident the father intended at one time to prefer his son Anson over his other children to the extent of giving him a part of the Flagel farm, but, whether he changed his mind or just put off making the gift, the fact remains that he died without making the gift.   No contract to pay Anson wages for any period can be found from the expressions of the father, and much less to compensate him by grant of the Flagel farm.   At the very time of the claimed expressions of intention Anson was working the Flagel farm on shares, and this negatives any claim of working for other hire or under a different contract with his father.   It would be extremely dangerous to predicate a contract of hiring between the father and son upon declarations of the father of intention to give the son a particular farm.   The hope of the son rested upon the bounty of the father, and not upon a contract of hiring.   The father was grateful, or at least so expressed himself, over the fact that Anson did not leave him as the other children had done, but paternal gratitude and filial conduct, so far as disclosed by this record, established no contract relations showing services for unrequited hire.

The judgment is affirmed, with costs against plaintiff.

SHARPE, C. J., and BIRD, SNOW, STEERE, FELLOWS, CLARK, and McDONALD, JJ., concurred.